**John CLOUGH, MD, Plaintiff–Appellant,**

**v.**

**Dominica RUSH; Rueben Marchisano, MD; Pete Grenko, MD; Donald Clark, Personal Representative for the Estate; James Hockenberry, MD; Robert Trimble; Donald W. Welch, all individual defendants sued in their individual capacities and officials of the Hospital sued in their official capacities; Adventist Health Systems, Inc., Defendants–Appellees.**

No. 91–2062.

United States Court of Appeals, Tenth Circuit.

March 18, 1992.

Denise M. Glore, Albuquerque, N.M., for plaintiff-appellant.

John B. Pound of Montgomery & Andrews, P.A., Santa Fe, N.M., for defendants-appellees.

Before LOGAN and BARRETT, Circuit Judges, and PATRICK F. KELLY,** District Judge.

PATRICK F. KELLY, District Judge.

The underlying antitrust action arises from the suspension of Plaintiff John Clough's medical privileges at Sierra Vista Hospital (SVH) in Truth Or Consequences, New Mexico. Dr. Clough seeks reversal of the district court's entry of summary judgment in favor of Defendants, who were physicians, administrators, and owners of the hospital at the time of the suspension. The district court dismissed the action on res judicata and collateral estoppel grounds. Prior to reaching a review of that ruling, however, we must address the threshold question of whether we have jurisdiction to consider Dr. Clough's appeal. Upon careful review of the issues presented, we answer that question in the affirmative, and likewise affirm the district court on the merits.[1]

## Background

In March 1982, Dr. Clough applied for, and received, appointment to the medical staff at SVH as a general surgeon. In late 1984, he performed routine surgery on an elderly female patient. The next day, nurses noticed she had no urinary output. Two days after the surgery, Dr. Clough performed an intravenous pyelogram (IVP) on the patient. The test revealed blockage of the ureters. This is a very dangerous condition, as it can lead to kidney failure, which is life threatening.

Dr. Clough determined that sutures inserted during the initial operation caused the blockage. Without assistance from any other physicians, he performed a second operation to remove the sutures. During that surgery, Dr. Clough obtained an immediate flow of urine. As a consequence, he believed he had removed the blockage. He did not perform a second IVP to determine whether he had removed the entire blockage.

Approximately two weeks after the second surgery, the same patient was readmitted to SVH complaining of lower abdominal pain. Dr. Clough referred her to a different physician, who performed additional

---

** Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation.

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

surgery after an IVP revealed there was a suture remaining in her right ureter. The patient and her daughter later contacted SVH administrators complaining about Dr. Clough and threatening to sue the hospital. After reviewing the matter, the hospital's executive committee suspended Dr. Clough's privileges. Following several hearings and a review of the case by a panel of outside physicians, the privileges were reinstated. Dr. Clough resigned from the medical staff in May 1985.

On November 20, 1986, Dr. Clough filed an action in New Mexico state court alleging violations of New Mexico's antitrust act, as well as other contract and tort claims. The state court granted summary judgment in favor of Defendants. That decision was affirmed on appeal. *Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 780 P.2d 627, 633 (1989). While that case was pending, Dr. Clough filed this action, asserting the same state court claims but adding two claims under the Sherman Antitrust Act, 15 U.S.C. §§ 1–2.

The district court in this case granted Defendants' motion for summary judgment, concluding that res judicata and collateral estoppel bar the federal lawsuit. That order, which is fifteen pages long and contains extensive legal discussion, was entered on January 31, 1991. The district court docket sheet reflects entry of the order on that date.

On February 19, 1991, Dr. Clough's attorney contacted counsel for the Defendants requesting a one-day extension to file a Fed.R.Civ.P. 59(e) motion.[2] Defense counsel agreed to the extension, and the district court granted it. On February 20, Dr. Clough's attorney filed a self-styled "motion for reconsideration" pursuant to Rule 59(e). Defense counsel filed a response, citing *Marane, Inc. v. McDonald's Corp.*, 755 F.2d 106 (7th Cir.1985), which pointed out that the court had no jurisdiction to entertain the motion for extension.

On March 7, 1991, the district court denied the motion for reconsideration. The court based its denial on the acknowledgment that it had no jurisdiction to entertain the untimely motion. Approximately eight days later, Dr. Clough's counsel filed a notice of appeal. At no time did counsel file a motion to extend the time to appeal. *See* Fed.R.App.P. 4(a)(5). In his reply in support of the motion for reconsideration, however, Dr. Clough argued that the time periods identified in Rule 59 did not apply to the case because the district court never entered a "separate document" pursuant to Fed.R.Civ.P. 58.

After this appeal was initiated, Defendants filed a motion to dismiss, arguing that the January 31 order triggered the time for filing an appeal. They urge that because the Rule 59 motion was untimely, it could not toll the thirty-day period for bringing an appeal. *See Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264–65, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978). Thus, they argue Dr. Clough's appeal period expired on March 2, 1991. Under Fed.R.App.P. 4(a)(5), a party may extend the time for appealing if a motion for extension is filed within thirty days of the expiration of the appeal period. Defendants argue that this appeal is untimely because Dr. Clough did not use this procedure. Instead, he simply filed a notice of appeal.

Conversely, Dr. Clough maintains that because no separate document was filed, as is required under Fed.R.Civ.P. 58, entry of the January 31 order did not trigger the thirty-day period for filing a notice of appeal. He contends that as a result, his motion for reconsideration and the subsequent notice of appeal were timely. After careful review of the issues presented, we hold that the absence of a separate document renders the January 31 order nonfinal. We conclude this action is properly before the court. On the merits, however, we affirm the district court.

## I.

■ Fed.R.Civ.P. 58 states, in pertinent part, "[e]very judgment shall be set forth

---

**2.** We note that Dr. Clough's motion was untimely regardless of the extension, as Fed.R.Civ.P. 59(e) requires motions to be served "not later than 10 days after entry of the judgment."

on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)."[3] Under the former rules, it was not always clear when judgment entered for purposes of triggering the appeal process. The intended purpose of the existing rule is to eliminate those uncertainties. *See Kline v. Department of Health & Human Servs.*, 927 F.2d 522, 523 (10th Cir.1991). When the 1963 amendments were made to Rule 58, the advisory committee added the following note:

> Hitherto some difficulty has arisen, chiefly where the court has written an opinion or memorandum containing some apparently directive or dispositive words, e.g., 'the plaintiff's motion [for summary judgment] is granted.' Clerks on occasion have viewed these opinions or memoranda as being in themselves a sufficient basis for entering judgment in the civil docket as provided by Rule 79(a)....
>
> The amended rule eliminates these uncertainties by requiring that there be a judgment set out on a separate document—distinct from any opinion or memorandum—which provides the basis for the entry of judgment.

Fed.R.Civ.P. 58 advisory committee's note (citations omitted). Thus, the rule applies in any case where there is uncertainty about whether final judgment has entered. *United States v. Clearfield State Bank*, 497 F.2d 356, 358 (10th Cir.1974).

■ The separate document rule does not apply, however, where "there is no question about the finality of the court's decision." *Slade v. United States Postal Serv.*, 952 F.2d 357, 359 n. 1 (10th Cir.1991). Generally, orders containing neither a discussion of the court's reasoning nor any dispositive legal analysis can act as final judgments if they are intended as the court's final directive and are properly entered on the docket. *See Kline*, 927 F.2d at 523–24; *see also, e.g., Laidley v. McClain*, 914 F.2d 1386, 1390 (10th Cir. 1990) (single page order adopting magis-

trate's recommendation on summary judgment meets requirements of Rule 58); *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1272 n. 3 (10th Cir.1989) (court properly exercised jurisdiction where, despite absence of separate document, district court disposed of entire complaint); *Clearfield*, 497 F.2d at 358–59 (no separate document needed where order granting summary judgment is itself a separate document).

■ The order which the district court entered disposing of the motion for summary judgment does not meet Rule 58 requirements. In addition to being fifteen pages long, it contains detailed legal analysis and reasoning. Thus, it could not, standing alone, trigger the appeal process. A separate document constituting the court's final judgment was needed. Because no separate entry was made, the January 31 Order was not final.

■ Under certain circumstances, however, the parties may waive the separate document requirement. *See Slade*, at 359 n. 1. Normally this occurs where both parties proceed under the mistaken assumption that an order is final when, in fact, no separate document was ever filed. *See generally Aviles v. Lutz*, 887 F.2d 1046, 1047 n. 1 (10th Cir.1989) (court entertaining jurisdiction despite absence of separate document where, apparently, no objection was made and the district court "disposed of the entire complaint").

The Supreme Court has instructed that under such circumstances, the absence of a separate document should not be used to defeat consideration of the merits.

> If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose....

---

**3.** Fed.R.Civ.P. 79 is entitled "Books and Records Kept by the Clerk and Entries Therein." Rule 79(a) governs civil docket entries.

.... The need for certainty as to the timeliness of an appeal ... should not prevent the parties from waiving the separate-judgment requirement where one has accidentally not been entered.

*Bankers Trust Co. v. Mallis,* 435 U.S. 381, 385–86, 98 S.Ct. 1117, 1120–21, 55 L.Ed.2d 357 (1978) (footnote omitted). The actions which Dr. Clough's counsel took in this case could be construed as admitting the finality of the district court's summary judgment order. In particular, counsel implicitly acknowledged the finality of the order when she filed a motion under Fed. R.Civ.P. 59, which only applies to judgments.[4] Moreover, it is clear from a reading of the court's order that it disposed of all claims.

■ We hold, however, that the absence of a separate document is fatal to Defendants' motion to dismiss. The separate document rule "should be interpreted to prevent loss of the right to appeal." *Bankers Trust,* 435 U.S. at 386, 98 S.Ct. at 1121. As a consequence, waiver may not be used to defeat jurisdiction. *See Amoco Oil Co. v. Jim Heilig Oil & Gas, Inc.,* 479 U.S. 966, 969, 107 S.Ct. 468, 471, 93 L.Ed.2d 413 (1986) (Blackmun, J., dissenting from denial of certiorari) ("the separate-document requirement must be applied mechanically in order to *protect* a party's right of appeal"); *Reid v. White Motor Corp.,* 886 F.2d 1462, 1465–68 (6th Cir. 1989) (holding appellant could not waive Rule 58 requirements to defeat jurisdiction), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *see also United States v. Indrelunas,* 411 U.S. 216, 219, 93 S.Ct. 1562, 1563, 36 L.Ed.2d 202 (1973) ("Rule 58 was substantially amended ... to remove uncertainties as to when a judgment is entered....").

■ Our holding that Rule 58 waiver may not be used to defeat jurisdiction does not, however, end our inquiry. In this case, no separate document was ever filed. Therefore, we must consider whether remand is appropriate. We hold it is not. In *Bankers Trust,* the Supreme Court acknowledged that requiring remand in waiver cases would amount to an exercise in "wheel spinning." 435 U.S. at 385, 98 S.Ct. at 1120. The same is true here. Efficiency and judicial economy would not be served by requiring the parties to return to the district court to obtain a separate judgment. For this reason, we accept jurisdiction and move on to consider the merits of Dr. Clough's appeal.

## II.

The district court ruled res judicata and collateral estoppel bar Dr. Clough's federal claims. We review this ruling de novo, applying the same standards as the district court under Fed.R.Civ.P. 56(c). Summary judgment is appropriate only when the case involves no genuine issues of fact and the moving party is entitled to judgment as a matter of law. *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). After reviewing the record in a light most favorable to Dr. Clough, we conclude the district court's disposition was correct.[5]

Although res judicata and collateral estoppel are closely related, there are differences between the two which are significant for purposes of analyzing Dr. Clough's claims.

Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Under collateral estoppel, "once a court has decided an

---

4. The self-styled "motion for reconsideration" is not recognized under Rule 59. *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir. 1991). Counsel's belief to the contrary notwithstanding, Rule 59 is a vehicle for amending or altering judgments.

5. As a preliminary matter, we note "the prevailing sentiment that summary judgment should be used sparingly in antitrust cases." *City of Chanute v. Williams Natural Gas Co.,* 955 F.2d 641 (10th Cir.1992). Where the standards of Fed.R.Civ.P. 56(c) are met, however, it is an appropriate vehicle for deciding antitrust cases. *See id.* at 646–647 (outlining procedures for reviewing grant of summary judgment in antitrust case).

issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."

*Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520 (10th Cir.1990) (citations omitted). At the heart of the res judicata and collateral estoppel doctrines is an effort to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Northern Natural Gas Co. v. Grounds,* 931 F.2d 678, 681 (10th Cir.1991). It is with these principles in mind that we review the issues presented.

■ Counts III through VII of Dr. Clough's federal complaint are mirror reflections of the claims brought in state court. Specifically, counts III and IV state claims under New Mexico's antitrust act. *See* N.M.Stat.Ann. §§ 57–1–1, 57–1–2. Counts V through VII allege state law tort and contract causes of action which were raised in state court. The parties sued are the same. *See Clough,* 780 P.2d at 628.

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

*Grounds,* 931 F.2d at 682 (quoting *Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 19 Cal.2d 807, 122 P.2d 892, 895 (1942)). Here, the three requirements have been met. The claims presented in counts III through VII are exactly the same in both lawsuits, as are the parties. Further, the New Mexico Supreme Court issued a decision addressing the merits of the claims. We agree with the district court, therefore, that these claims are barred.

■ Dr. Clough's Sherman Act claims could not be brought in state court. *See General Inv. Co. v. Lake Shore & M.S.*

*Ry.,* 260 U.S. 261, 287, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922). In order to be barred, therefore, the claims must fall under the doctrine of collateral estoppel, or issue preclusion. This doctrine applies where there is "an identity of issues raised in the successive proceedings and the determination of these issues by a valid final judgment to which such determination was essential." *Sil–Flo,* 917 F.2d at 1520. Further, collateral estoppel cannot be applied unless the party had an opportunity to "fully and fairly" present and argue its claims in the prior proceeding. *Smith Machinery Co. v. Hesston Corp.,* 878 F.2d 1290, 1293 (10th Cir.1989), *cert. denied,* 493 U.S. 1073, 110 S.Ct. 1119, 107 L.Ed.2d 1026 (1990).

In New Mexico, courts interpret state antitrust claims " 'in harmony with judicial interpretations of the federal antitrust laws.' " *Clough,* 780 P.2d at 630 (quoting *Smith Machinery Corp. v. Hesston, Inc.,* 102 N.M. 245, 694 P.2d 501, 505 (1985)). Indeed, the New Mexico statute was patterned after the Sherman Act. *Id.; see also Smith,* 878 F.2d at 1292–93 ("[W]e observe that any preclusion arguments made with regard to the state antitrust claim logically would apply to the Sherman Act claim as well [because] [t]he relevant state law is patterned after section 1 of the Sherman Act....") (footnote omitted)). Thus, the New Mexico decision can preclude consideration of the federal claim. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) (state court judgment may preclude later action that is within federal court's exclusive jurisdiction).

Dr. Clough argues that preclusion should not apply because he was not given an opportunity in the state case to pursue discovery to prove his conspiracy claims. He contends Defendants intentionally withheld information in the state case. Further, he maintains that because the state court summary judgment was based on insufficiency of the evidence, rather than litigation of actual factual issues, preclusion does not apply. After a careful review

of the voluminous record in this case, we must disagree.

There is nothing in the record to indicate Dr. Clough was not afforded a full and fair opportunity to litigate his claims. While he claims Defendants fraudulently withheld evidence in the state case, there is no support in the record for that proposition. Further, unlike the situation in *Smith*, on which Dr. Clough relies, the state court here considered the merits of all the claims. *See Smith*, 878 F.2d at 1293 (party not afforded full opportunity to litigate claims where state court stressed that its decision "[was] not to be construed as a commentary on the ultimate merits"). There is no support for Dr. Clough's argument that he was somehow restricted in the state court proceedings. Accordingly, we hold the federal claims are barred.

Defendants' Motion To Dismiss Appeal is DENIED. The judgment of the United States District Court for the District of New Mexico is AFFIRMED.